**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | **CHAPTER 11** |
| | ) | |
| **EDWARD L. BYINGTON, JR.** | ) | **Case No. 11-70729** |
| and | ) | |
| **RUTH N. BYINGTON,** | ) | |
| Debtors. | ) | |

---

## MEMORANDUM DECISION

Before the Court is the Debtors' Application to Employ (the "Application") the firm of Copeland & Beiger, P.C. (the "Firm") as their counsel for the conduct of this case. To this Application the United States Trustee has filed an Objection on the basis of inconsistent and inaccurate disclosures regarding the pre-petition services rendered by the Firm to the Debtors. A lengthy hearing upon the Application and the Objection was held on May 18, 2011, at the conclusion of which the Court stated from the bench certain preliminary findings and conclusions, which it hereby incorporates by reference. This Memorandum Decision will only deal with two issues presented by this dispute: (1) whether there was an obligation to disclose a pre-filing transfer by the Debtors' son, Mark Byington, to the Firm of $1,039 for the filing fee of a Chapter 11 case then being contemplated by his parents, and (2) whether the filings made in this case by the Debtors and the Firm sufficiently disclose the Firm's intention to make no charge to the Debtors or anyone else for the pre-filing legal services which it provided to them during the twelve month period preceding the bankruptcy filing and for which it represents that it received no payment during that time. Since the date of the hearing the Court requested that counsel provide their views with regard to the case filing fee issue and they have done so. An Amended Declaration of Robert T. Copeland was filed on May 3 that expressly stated that the

filing fee was paid to the Firm by ML&L, Inc.[1]  During the May 18 hearing the Firm's

engagement partner, Mr. Robert T. Copeland, took the position that there was no obligation to

disclose that payment.  At least under the facts presented here, the Court concludes otherwise.

The consequences of the Firm's failure to do so will be set forth at the end of this Decision.

## FINDINGS OF FACT

The facts relating to the issues dealt with in this Memorandum Decision appear to

be largely, if not entirely, undisputed.  Mr. Byington, who testified that he is 83 years old, like

many others of his generation, rose from rather humble beginnings to significant business

success.  He not only became the president of a successful savings and loan association but also

acquired with his wife a successful oil recovery and recycling business.  Up until just a very few

years ago, he and Mrs. Byington were apparently enjoying a well-earned and very comfortable

semi-retirement.  Unfortunately, as a combined result of the general economic downturn, their

falling victim to some fraudulent lottery prize or investment scheme activities, and likely some

other serious errors of judgment on their part, their good life has been turned upside down and

they are scrambling to preserve what they have left of their material resources as well as their

dignity and sense of well-being.

The Firm, through its bankruptcy and insolvency specialist, Mr. Robert T.

---

[1] Since the date of the hearing, however, an amended Application and an amended
Statement of Financial Affairs were filed on May 20.  In the amended Application, the facts
surrounding the payment of the filing fee are disclosed.  Attached to the amended Application is
the Third Amended Declaration of Robert T. Copeland in which Mr. Copeland again discloses
the payment of the filing fee by the Debtors' son and states that "[t]he Firm has waived all fees
and expenses for services rendered prior to April 1, 2011."  Question no. 9 in the amended
Statement of Financial Affairs also discloses the payment of the filing fee by the Debtors' son
through ML&L, Inc.

Copeland, began assisting the Byingtons sometime in March of 2010.  At the time they had

become delinquent on their home mortgage.  According to his account, Mr. Copeland advised

them to access some of their retirement funds to bring the mortgage current, which they did.

This initial contact occurred soon after their transfer of ownership of three companies, Necessary

Oil Company, Realm Properties, L.L.C. and NTC, Inc., to a company identified as ML&L, Inc.,

which was owned by the Byingtons' son, Mark Byington.  Whether or not Mr. Copeland was

then aware of such transfer is not clear but is unimportant to the resolution of the issues

addressed here.  In any event, Mr. Copeland has represented to the Court in response to its post-

hearing inquiry that he did not advise the Byingtons concerning the transfer of their companies.

Both the United States Trustee and the Court have accepted this representation.  No bill was

submitted for these services and no payment was made by the Byingtons to the Firm.  Mr.

Copeland's next contact with the Byingtons was in the Fall of 2010 in a meeting with officials

and counsel of one of the banks with which the Byingtons did business.  At that point the

Byingtons had authorized wire transfers of most of their cash balances[2] out of the country

pursuant to the persuasive representations made to them by telephone by con men who they had

never met.  It was agreed that they would make no additional transfers of such kind.

Nevertheless, according to the testimony of Mrs. Byington, one or more of these con men

managed to convince her that one additional transfer to cover a supposed legal fee would beyond

any doubt result in the release of what had been promised to her and the Byingtons made one

final transfer in January of 2011.  Of course, they did not receive what had been promised to

---

[2] The particulars of the dates and amounts of these transfers are not disclosed in the
evidence.

3

Mrs. Byington, and this last transfer left them bereft of money to pay their mortgage and basic living expenses.

At this point the Byingtons returned to Mr. Copeland and they began to plan on how they might be able to extract themselves from the desperate situation in which they found themselves. A meeting took place at the Firm's office, apparently on February 10, 2011, involving the Byingtons, Mark Byington, their daughter, who lived out of state, by telephone, and Mr. Copeland. During that meeting it was either tentatively or finally agreed that the Firm would file a Chapter 11 bankruptcy petition for the Byingtons. Mark Byington asked what would have to be done to accomplish that objective. Mr. Copeland stated that the court filing fee to file such a petition was $1,039 and that this amount would have to be paid before the case could be filed. Mark Byington pulled out a check, wrote it out for that exact amount, signed it, and went down the hall and turned it over to the Firm's bookkeeper. She took it back to Mr. Copeland's office while the meeting was still in progress and asked him for instructions as to what she should do with it. He told her that it should be deposited into the Firm's trust account and stay there until the case would be filed. At that time Mr. Copeland assumed that it was a personal check signed by Mark Byington and learned only after the filing that the check was actually on the account of ML&L, Inc. The check was deposited into and its proceeds remained in the trust account until the Chapter 11 petition was filed on April 1, 2011. Under the mandatory procedures of this Court, bankruptcy petitions filed by attorneys must be filed electronically and payment of the case filing fee must be made contemporaneously, also electronically, by means of a credit card. The Byingtons' case was filed on April 1, 2011 and the filing fee was paid by use of the Firm's business credit card which it ordinarily used for that

4

purpose.  Immediately after the filing the Firm's bookkeeper effected an electronic payment

from the trust account to the credit card account to cover the filing fee which had just been paid.

Prior to the filing of the petition, the Byingtons signed paper originals of the

petition and other documentation incident to the filing, including a representation agreement

with the Firm and an application to obtain court approval of the Firm's representation of the

Byingtons for the general conduct of the bankruptcy case.  At that time Mr. Copeland advised

them that no charge was being made for the legal services which the Firm had provided to them

up to that point.  The evidence is that the Firm did not charge the Byingtons for any legal

services during the time of March 2010 until the April 1, 2011 filing date, that it was not paid

anything for those services, and that through Mr. Copeland it expressly waived any claim for

payment for the pre-petition services.

Although the original filings in this case did state that the Firm had not received

any payment for pre-filing services and was not owed any money for them, there was no mention

in any of the documents filed of the pre-filing receipt of the case filing fee.  The original

Statement of Financial Affairs did disclose the March 2010 transfer of the three companies, but

stated that it was made directly to Mark Byington rather than to his corporation, ML&L, Inc.

The Court further finds those facts which are mentioned in the latter portions of

this Memorandum Decision but are not specifically noted above.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District

Court on July 24, 1984.  An application by a Chapter 11 debtor-in-possession to employ counsel

is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A).

## I.  Case Filing Fee

### A. Disclosure in Statement of Financial Affairs.

Federal Rule of Bankruptcy Procedure 1007(b)(1)(D), as pertinent to this case,

requires the debtor to file a "statement of financial affairs" which has been "prepared as

prescribed by the appropriate Official Form[ ]."  Official Form 7 sets forth the format and

general requirements of the Statement of Financial Affairs ("SOFA").  Question no. 9 covers the

subject of "Payments related to debt counseling or bankruptcy."  That question requires

disclosure of the following information:

> List all payments made or property transferred by or on behalf
> of the debtor to any persons, including attorneys, for consultation
> concerning debt consolidation, relief under the bankruptcy law or
> preparation of a petition in bankruptcy within **one year** immediately
> preceding the commencement of this case.

For any such payment or transfer made, the name and address of the payee, the date of payment,

the name of the payor if other than the debtor, and the amount of money or description and value

of the property transferred must be disclosed.  In this case the answer provided was that no such

payment or other transfer had been made.   Mr. Copeland and counsel for the United States

Trustee have clashed over whether the payment of the filing fee by Mark Byington, which

payment was deposited to the Firm's trust account rather than its operating account, was a

transfer to the Firm for the expense of the filing fee.  They have also disputed whether the case

filing fee was defined as an "expense" for which the Debtors would be obliged to pay under the

terms of the employment agreement.

The Court believes that it should rest its decision upon its understanding of the

6

purpose and intended parameters of question no. 9 of SOFA. Although the Court concedes that

the precise language of question no. 9 is indeed subject to differing good faith interpretations, it

concludes that disclosure of the payment of the Debtors' filing fee by their son is required to be

disclosed pursuant to that question. The problem of interpretation is certainly not with the

heading to question no. 9 ("Payments related to debt counseling or bankruptcy"). Indeed it

would be difficult to suggest any payment more clearly constituting a "[p]ayment[] related to . . .

bankruptcy" than one for the case filing fee. No, the difficulty is with the precise wording of the

question itself. Specifically, whether the words "consultation concerning" appearing in the

question segment "for consultation concerning debt consolidation, relief under the bankruptcy

law or preparation of a petition in bankruptcy" are intended to modify only the words "debt

consolidation" which immediately follow them or also the language in the two following clauses

"relief under the bankruptcy law" and "preparation of a petition in bankruptcy."[3] There is some

difficulty with either alternative. If the words "consultation concerning" only modify "debt

consolidation," then disclosure of "payments for . . . relief under the bankruptcy law" would

have to be disclosed, but "payments for consultation concerning . . . relief under the bankruptcy

law" arguably would not be covered. To require disclosure of payments for consultation

regarding debt consolidation but not for payments for consultation dealing with relief under the

bankruptcy law would be a strange result. On the other hand, if the words "consultation

---

[3] Although it did not explicitly address the interpretive problem raised by this Court's analysis, the decision in the case of *In re Jackson*, 401 B.R. 333, 340 (Bankr. N.D. Ill. 2009) stated that the debtor's attorney had the debtor file a Statement of Financial Affairs indicating that in the year prior to the case, the debtor had made no payments "to anyone, including attorneys, for consultation concerning relief under the bankruptcy laws." This Court's research has not produced any decision, published or unpublished, which specifically deals with disclosure of the source of the case filing fee under SOFA.

concerning" also modify "relief under the bankruptcy law," payments for consultation about relief would be covered, but arguably not payments actually to obtain relief under the bankruptcy law. That likewise seems a strange result. Similarly, if the words "consultation concerning" are taken to modify "relief under the bankruptcy law," it would logically seem to flow that they would also modify the clause "preparation of a petition in bankruptcy." Again it would seem to be a strange result to interpret the language as requiring disclosure of payment for "consultation concerning . . . preparation of a petition in bankruptcy" but not for payment for the actual preparation of the schedules, or vice-versa. Taking this last clause by itself it seems more likely that the intent of the question is to require disclosure of fees for the preparation of a bankruptcy petition, such as a fee paid to a bankruptcy petition preparer, than it is that the required disclosure would be limited to "consultation concerning" such preparation. On the other hand, taking the second clause by itself, it is difficult to explain why disclosure of payments for "consultation concerning . . . relief under the bankruptcy law" as well as payments actually to obtain such relief would not be deemed equally important.

The payment in question was made on February 10, 2011 in the form of a check made payable to the Firm that was deposited to its trust account. It was in precisely the amount of the filing fee for a Chapter 11 case and the son, the parents, and Mr. Copeland all clearly understood that the bankruptcy case would not be filed without that filing fee being covered and that the money was to be utilized for that specific purpose. The money in question was paid to the Firm, albeit for a specified purpose to be sure, and placed under its dominion even though the ethical obligations to which Virginia attorneys are subject precluded its use for any purpose other than the one for which it had been provided. Mr. Copeland represents that the money

8

would have been returned to the son if the case had not been filed, which the Court accepts.  In

that sense the payment was not made "to" the Firm.  Nevertheless, it strikes the Court as beyond

reasonable dispute that this money was a "[p]ayment[] related to . . . bankruptcy" within the

reasonably understood scope of the heading to question no. 9.

When Mr. Copeland was asked by the Court to explain why disclosure of this

payment was not required by this language of question no. 9, he characterized the inquiry as a

"good question" but went on to offer a rationale as to why that language did not apply in this

particular situation.  As the Court understands his position, it is that the filing fee would have to

be paid contemporaneously with the filing, that the Firm was unwilling to advance the filing fee

itself on credit to the Debtors, that the check was delivered for that express purpose of paying the

case filing fee and was received in trust for that sole purpose, that the money while it was in the

trust account remained the property of the payor until it was used on April 1 to pay the credit

card company for the filing fee which had just been paid and therefore did not constitute a

payment or other transfer to the Firm prior to the filing, that the Firm was obliged by the

mandatory electronic filing procedures of this Court to use its business credit card to file the

petition, that immediately after it did so it effected an electronic payment from its trust account

to the credit card company to reimburse it for the filing fee just paid, and that the economic

reality of the transaction was that the son was paying the filing fee at the actual time of filing just

as if he had delivered a check payable to the clerk of the court for the filing fee which was paid

to the clerk at the very moment of filing.  This is too fine a distinction for the Court to accept.

The Court need not consider the disclosure implications resulting from a payment by some third

party of a bankruptcy debtor's case filing fee at the very moment of filing to observe that such a

scenario is not presented here.  The writing and delivery of the check for the filing fee followed

by its deposit into the Firm's trust account and subsequent clearing and payment by the drawee

bank comprised a transfer which was completed weeks prior to the petition filing even if the

check's proceeds remained the payor's property until the purpose for which it was delivered was

fulfilled.  To suggest that no transfer to the Firm took place as a result and that rather the Firm

was acting in effect as the son's undisclosed agent to effect the payment of the filing fee raises

even more troubling issues about the failure to disclose this transfer in the bankruptcy

documentation.  Mr. Copeland has pointed out to the Court that there does not appear to be any

court decision dealing with the factual situation presented in this case.  That does indeed seem to

be true.  Nevertheless, in this Court's opinion, experienced bankruptcy counsel ought to resolve

any uncertain matter in favor of disclosure as opposed to non-disclosure or disclosure only after

an objection to an employment application is filed.

Beyond the precise language of question no. 9 of SOFA, however, which the

Court acknowledges is subject to varying interpretations when placed under the highest level of

scrutiny, the failure to disclose the payment and source of the case filing fee under the

circumstances presented here is inconsistent with both the spirit and overarching purpose of the

very rigorous disclosure regime imposed by applicable provisions of the Bankruptcy Code and

the Rules of Bankruptcy Procedure.  In this case the Statement of Financial Affairs also discloses

that the Debtors in March of 2010, slightly more than a year prior to their bankruptcy filing,

transferred to Mark Byington, their son, ownership of three companies.[4]  Those three companies

---

[4] It now appears that the transfer in question was actually made to the son's corporation, ML&L, Inc.  To date, however, no correcting amendment to SOFA has been filed in this case.

were indicated at the May 18 hearing to be the subject of a Chapter 11 reorganization case in the

Bankruptcy Court for the Eastern District of Tennessee being handled by Tennessee counsel.

This same individual (Mark Byington), by means of a check written on the account of his

corporation, advanced the case filing fee for his parents, the transferors, to file their own

personal Chapter 11 case in Virginia nearly two months prior to such filing being effectuated.

While there may well be a perfectly innocent and understandable explanation for these events, it

should be apparent that both the transfer of the companies and the assumed transferee's

subsequent "gift" of the filing fee for the latter's parents, the transferors, are events which must

face the full light of day.  It is apparent that at least a provisional, if not final, decision had been

reached in early February of 2011, which was within twelve months of the transfer of the

companies, for the Byingtons to file a personal Chapter 11 case, but that for whatever reason or

reasons the filing did not take place until April 1, more than twelve months after such transfer

had been effected.  While such a delay would be immaterial as far as any challenge to the

transaction pursuant to Code § 548 might be concerned, it could preclude any possible challenge

to the transfer pursuant to § 547 on the basis of being a preferential transfer to an inside creditor.

**B. Disclosure of the Receipt of the Case Filing Fee as a "Connection" of the Firm to the Transferee of a Material Pre-Petition Transfer Pursuant to § 327.**

This Court has had very recent occasion, indeed subsequent to the filing date of

the present case, to review again the obligations assumed by an attorney seeking the bankruptcy

court's approval of his or her employment by a Chapter 11 debtor-in-possession.[5]  Accordingly,

it will incorporate relevant and in some places edited or revised portions of that discussion in this

---

[5] *See In re Circle T Pipeline, Inc.*, No. 11-70556 (Bankr. W.D. Va. Apr. 27, 2011).

11

decision.

The statutory provisions governing employment of attorneys and other

professional persons by a bankruptcy trustee are contained in 11 U.S.C. § 327.  Subsection (a)

provides in part as follows:

> Except as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys . . . that do not
> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying out
> the trustee's duties under this title.

As pertinent to the subject of employment of counsel, a Chapter 11 debtor-in-possession has the

same rights, powers and duties as a trustee.  11 U.S.C. §1107(a).  Bankruptcy Rule 2014(a)

requires that an application for employment of counsel:

> state the specific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of the
> person's connections with the debtor, creditors, any other party in
> interest, their respective attorneys and accountants, the United States
> trustee, or any person employed in the Office of the United States
> trustee.

The phrase "interest adverse to the estate" contained in section 327(a) is not

defined in the Bankruptcy Code itself, but a number of bankruptcy courts have approved the

following definition:

> Undefined by the Bankruptcy Code, an "adverse interest" has
> come to mean either (1) the possession or assertion of any economic
> interest that would tend to lessen the value of the bankruptcy estate
> or create an actual or potential dispute with the estate as a rival
> claimant, or (2) a predisposition of bias against the estate.

*In re Granite Partners*, *LP,* 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998); *accord In re Mercury*, 280

B.R. 35, 55 (Bankr. S.D.N.Y. 2002); *In re Keller Fin. Servs. of Fla., Inc.*, 243 B.R. 806, 812

(Bankr. M.D. Fla. 1999); *In re C&C Demo, Inc.*, 273 B.R. 502, 505 (Bankr. E.D. Tex. 2001).

*See generally,* 3 *Collier on Bankruptcy* ¶ 327.04[2][b], at p. 327-34 (Alan N. Resnick & Henry J.

Sommer eds., 16th ed. 2011).  While the term "interest adverse to the estate" is not defined in the

Code, the term "disinterested person" is defined at 11 U.S.C. § 101(14) as a person that:

> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of
> the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the
> estate or of any class of creditors or equity security holders, by reason
> of any direct or indirect relationship to, connection with, or interest
> in, the debtor, or for any other reason.

The role of counsel for the general conduct of a bankruptcy case on behalf of a

debtor-in-possession encompasses both the assertion of all claims to which the debtor, or the

debtor's bankruptcy estate, pursuant to the "strong arm" and avoidance powers provided by

sections 544, 545, 547, 548, 549, and 553(b) of the Code, may be entitled, and the careful review

of and, where appropriate, objection to all claims asserted against it.  The Code requires that an

attorney employed by a debtor-in-possession to represent it generally in the conduct of the case

must be able to give it wholly undiluted loyalty.  It is this Court's responsibility to apply and

enforce the statutory requirements set by Congress unless it would produce an "absurd" result or

"an outcome that is demonstrably at odds with the clearly expressed congressional intent."  *RCI*

*Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 265 (4th Cir. 2004); *Lamie*

*v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is

plain, the sole function of the courts–at least where the disposition required by the text is not

absurd–is to enforce it according to its terms.'" (quoting *Hartford Underwriters Ins. Co. v.*

*Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

13

As already noted above, Bankruptcy Rule 2014(a) obliges the trustee or debtor-in-possession to include in an application for employment of a professional person, "to the best of the applicant's knowledge, all of the person's **connections** with the debtor, creditors, [and] any other party in interest," and similarly requires the professional person to make "a verified statement . . . setting forth the person's **connections** with the debtor, creditors, [and] any other party in interest." (emphasis added in both quotes). This disclosure "must be explicit enough for the court and other parties to gauge whether the person to be employed is not disinterested or holds an adverse interest." *In re Midway Indus. Contractors, Inc.*, 272 B.R. 651, 662 (Bankr. N.D. Ill. 2001). Published bankruptcy court decisions are quite consistent in requiring that debtors-in-possession and their attorneys, whose employment is sought to be approved, be meticulous in disclosing "all connections" with the debtor and other parties in interest, the failure to do so justifying a court's taking significant punitive or corrective action. If no actual conflict of interest is presented and the Court is satisfied that there was no intent to conceal on counsel's part, disqualification of counsel and/or denial of all compensation is not mandated and the proper remedy is left to the Court's broad discretion. *See In re Northwestern Corp.*, No. 03-12872 (CGC), 43 Bankr. Ct. Dec. 93, 2004 Bankr. LEXIS 1023, at *6, 2004 WL 1661016, at *2 (Bankr. D. Del. July 23, 2004) (disqualification denied because disclosures made early in case to United States Trustee indicated no intent to conceal); *Midway Indus. Contractors*, 272 B.R. at 663-65. Nevertheless, because "[t]he objective of requiring disclosure is not so much to protect against prejudice to the estate, but to ensure undivided loyalty and untainted advice from professionals . . . . [L]ack of disclosure in and of itself is sufficient to warrant disqualification, even if in the end there was no prejudice." *Midway Indus. Contractors*, 272 B.R. at 664 (citation

14

omitted); s*ee also In re Rabex Amuru of N.C., Inc.*, 198 B.R. 892, 897 (Bankr. M.D.N.C. 1996)

(attorneys for debtor removed because of appearance of impropriety, even though no harm done

to debtor).

Although the issue of a failure to disclose all material connections by  counsel for

a Chapter 11 debtor-in-possession  has arisen only rarely in this Court, when it has the Court has

dealt with it in a manner consistent with the approaches utilized by its sister bankruptcy courts.

For example, In the case of *In re Five Forty Park Corp.*, No. 03-04746 (Bankr. W.D. Va. Sept.

30, 2004), this Court prospectively, but not retroactively, sustained a motion to disqualify

counsel for a Chapter 11 debtor due to material omissions in the disclosure of counsel's prior

"connections" with various material parties in interest in the case.

So, the question of the hour is whether, under the circumstances presented here,

the Debtors' and the Firm's joint failure to disclose that the former's son, who had received on or

about March 1, 2010, directly or indirectly, from the parents the Debtors' ownership stakes in

three closely held operating companies, had been involved in a conference with them and their

prospective bankruptcy counsel on or about February 10, 2011 and at that time had provided,

whether personally or through his wholly-owned corporation, the $1,039 case filing fee for a

Chapter 11 petition which was filed on April 1, 2011, was a "connection" which ought to have

been disclosed.  The transfer of the companies to the son was disclosed, as it had to be, in SOFA,

but the combined facts of the transfer to the son, his participation in the conference at which the

decision, whether provisional or final, was reached for the parents to file a Chapter 11 case, and

his providing the case filing fee for that decision to be implemented were not mentioned in the

Application or the Firm's accompanying Declaration.  The Court concludes that such facts

15

should have been disclosed as they may bear on the extent, if any, to which the son is involved

as a controlling force in the parents' bankruptcy and indeed their very decision to file bankruptcy

and the timing for doing so, as well as whether as a result of the son's involvement the Firm

would feel itself constrained from examining with a completely unclouded eye the propriety of

that transfer to him.  Of course, the fact that the companies which were the subject of the transfer

are themselves parties to a Chapter 11 proceeding (or proceedings) in the Bankruptcy Court for

the Eastern District of Tennessee may suggest that such transfer may have been seen by the

parties involved as an element of a family financial rescue operation of elderly parents rather that

one intended for the family's overall advantage and the corresponding disadvantage of the

parents' creditors.  The Court appreciates that when the parties involved and their counsel

consider that their motives and actions are "pure," it may be easy for them to overlook that other

parties may harbor doubts or suspicions.  Nevertheless, the Court concludes that the facts

recounted here should have been included in the Application and the Firm's Declaration as

possibly implicating the Firm's being able to act as an entirely "disinterested" person in its

representation of the Debtors in their capacity as debtors-in-possession.  As noted by the

Bankruptcy Appellate Panel of the United States Court of Appeals for the Ninth Circuit in a

2005 decision:

> Pursuant to § 327, a professional has a duty to make full, candid
> and complete disclosure of all facts concerning his transactions
> with the debtor. Professionals must disclose all connections with
> the debtor, creditors and parties in interest, no matter how
> irrelevant or trivial those connections may seem. The disclosure
> rules are not discretionary.

*In re Triple Star Welding, Inc.*, 324 B.R. 778, 789 (B.A.P. 9th Cir. 2005) (emphasis omitted)

(quoting *Mehdipour v. Marcus & Millichap (In re Mehdipour)*, 202 B.R. 474, 480 (B.A.P. 9th

Cir. 1996)).

## II. Pre-filing Uncompensated Services

As already discussed in the preceding sub-section of this decision, the Bankruptcy

Code sets forth the authority for a Chapter 11 debtor, in its capacity as debtor-in-possession and

"with the court's approval," to employ attorneys who are "disinterested persons" and "do not

hold or represent an interest adverse to the estate" to represent it in the general conduct of the

case. 11 U.S.C. § 327(a). This section is implemented by Rule of Bankruptcy Procedure 2014,

which requires that an application to employ a professional person disclose, among many other

things, "any proposed arrangement for compensation." Although the original Application filed

requests in paragraph no. 2 that the Court approve retention of the Firm "under a general

retainer," it subsequently states in paragraph no. 9 that the Firm "has not received a retainer fee

or an advance against expenses for services to be performed in the preparation and prosecution

of this Chapter 11 case." It further states in paragraph no. 10 that the Firm "hereafter intends to

apply to the Court for allowances of compensation and reimbursement of expenses . . . for all

services performed and expenses incurred after the Commencement Date." The Commencement

Date is indicated to be April 1, 2011, which was the same date the petition was filed. The Firm's

accompanying Declaration states that as of the Commencement Date "the Debtors [do] not owe

[it] any amounts for legal services rendered before the Commencement Date" (paragraph  no. 9)

and that within the preceding ninety days it had not "received any retainer for its pre-petition

work in preparing schedules and meeting with the Debtor[s]" (paragraph no. 10). The original

"Attorney-Client Retainer Agreement," also dated April 1, 2011 and filed with the Application

and Declaration, does not, however, utilize the same "Commencement Date" term or reference

17

the date of the agreement but contains the phrase "[b]eginning from the inception of the

representation" the Firm will render periodic statements for services and expenses.  Subsequent

amended filings make clear that the Firm had not received any retainer for compensation within

one year prior to the Commencement Date, that the Firm was waiving all fees for its pre-petition

services, and that it only sought to be compensated for its post-filing services.  The Court

concludes that the Application and any accompanying Statement (or Declaration) pursuant to §

329(a) and Rule 2014 should specifically disclose, if such be the case, that the attorney whose

employment is requested to be approved is waiving any compensation for pre-petition services.

Such a clear statement removes any possible issue of whether the attorney holds a claim against

the bankruptcy estate.[6]

The Code also requires the following of any attorney representing a bankruptcy

debtor:

> Any attorney representing a debtor in a case under this title, or in
> connection with such a case, whether or not such attorney applies for
> compensation under this title, shall file with the court a statement of
> the compensation paid or agreed to be paid, if such payment or
> agreement was made after one year before the date of the filing of the
> petition, for services rendered or to be rendered in contemplation of
> or in connection with the case by such attorney, and the source of
> such compensation.

11 U.S.C. § 329(a).  This section is effectuated by Bankruptcy Rule 2016(b) and Bankruptcy

---

[6] The Court is not intending to imply any ruling as to whether an attorney who has
provided uncompensated pre-petition services to a client with respect to the filing of a
bankruptcy case is obliged to waive any claim for the value of such services as the price which
must be paid to be eligible pursuant to the restrictions of § 329(a).

Form 203.[7]  The purpose of this disclosure obligation is to provide the bankruptcy court with the authority to review the reasonableness of compensation which may have been paid prior to the bankruptcy filing and the information necessary for it to exercise that authority.  It does not deal with the subject of pre-filing donated services rendered by an attorney.  The Court concludes that the Firm's Rule 2016(b) disclosure was correctly made.

### Decision

On the basis of the foregoing rationale, the Court concludes that question no. 9 of the Statement of Financial Affairs is properly interpreted broadly to require disclosure of the particulars regarding the case filing fee provided by the Debtors' son, Mark Byington, prior to the bankruptcy filing.  After all, it is intended to be a disclosure requirement to provide relevant or potentially relevant information to the Court and all parties in interest in the case, not a criminal statute which must be construed narrowly.  Any close or debatable issue ought to be resolved in favor of disclosure.  The Court further concludes that the receipt of the filing fee from Mark Byington ought to have been disclosed as a connection which the Firm had with a party in interest in the case as a pre-petition transferee of a material part of the Debtors' property.  Due to the novel situation presented by the facts of this case where the transferee was a close family member of elderly parents and the absence of prior controlling legal authority on point, the Court concludes that these omissions, standing alone and absent some indication that disclosure of the filing fee was expressly considered but rejected on the premise that there was an arguable basis upon which to contend that it was not mandated, are insufficient cause to deny

---

[7] This is designated as a "Director's Procedural Form" rather than an Official Form. Nevertheless it is the form customarily used by counsel to satisfy their Rule 2016(b) disclosure obligations.  It is often referred to as Form B 203.

the Application to employ the Firm.  However, because of the long experience of the Firm's

engagement partner in Chapter 11 bankruptcy cases, the Court will not approve compensation to

counsel for any services relating to correcting this deficiency or in asserting that such disclosure

was not required.  The Court concludes that the other filings in this case, as amended and

supplemented, are sufficient to disclose the Firm's waiver of compensation for its pre-petition

services.  The Court will not approve compensation for services relating to the amendment or

supplementation of such filings, even though it believes that such revisions were in the nature of

clarifying documents rather than changing what the clients and counsel had already agreed upon.

The Court will hold a final hearing on June 15, 2011 to address any remaining questions arising

from this decision as well as any other issues presented by the Application to employ and the

United States Trustee's opposition to same.

An Order in accordance with the above decision will be entered

contemporaneously herewith.

This 13th day of June, 2011.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE